## Louisville & Nashville Railroad Company v. Petrey.

.(Decided December 9, 1915.)

Appeal from Whitley Circuit Court.

1. Railroads—Liability for Wilful Injury to Trespasser by Throwing Ice From a Passing Train.—If a baggagemaster, while acting within the scope of his employment, throws a piece of ice from a moving train against a trespasser standing by the side of the track, whose presence he has discovered in time to prevent striking him, the company will be liable in damages for the injuries sustained by the trespasser.

2. Trial—Jury—Selection of.—Where bystanders are summoned as jurors in violation of the statute, it is reversible error not to discharge on motion timely made, the panel tendered to the litigant, although it may not appear that the rights of the complaining party were prejudiced by the refusal to sustain the motion to discharge.

BENJAMIN D. WARFIELD and H. H. TYE for appellant.

ROSE & POPE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Petrey, while standing about eight feet from the track of the appellant company at a point about one-half mile from the station of Nott, was struck by a piece of ice pitched from the baggage car of a passing train by the baggage man. The force of the impact broke his leg, and in this suit to recover damages for the injuries so sustained there was a verdict and judgment in his behalf for $2,500.00, and the railroad company appeals.

The evidence shows that Petrey started to walk on the railroad track from Jellico to Nott, a distance of about two miles, and that to get out of the way of the approaching train he had stepped off of the track at the time he was hurt.

On the trial of the case there was an effort on the part of Petrey to show by evidence that the track and right-of-way of the railroad company between Jellico and Nott was used by a sufficient number of persons to put upon the company the duty of anticipating their presence on the track and right-of-way, and the correlated duty of exercising such care not to injure them as is imposed at places where travelers on the tracks may be treated as licensees. But the trial court did not think the track and

right-of-way was used by a sufficient number of persons
to constitute Petrey a licensee, and in this conclusion we
concur. The place where the accident occurred was out in
the country some half a mile distant from the nearest
railroad station, and although persons at this place used
the track as they do everywhere, the record does not show
that the locality or the use of the track by the public was
sufficient to convert the users from trespassers into
licensees.

Treating Petrey as a trespasser, the court instructed
the jury that "if you believe from the evidence that the
block of ice mentioned by the witnesses was thrown,
pitched or dropped from the baggage car of the defendant
company by its baggage man or express man while in the
line of his employment performing the duties required of
him by the defendant company as such baggage man or
express man; and you further believe from the evidence
that the said block of ice so pitched, dropped or thrown
struck the plaintiff, Petrey, and that the said baggage
man or express man knew of the presence of or saw the
position of said Petrey in time to have avoided striking
Petrey with the ice and failed to do so, you will find for
the plaintiff, Petrey."

This statement of the law has been approved by this
court in L. & N. R. R. Co. v. Eaden, 122 Ky., 818, 6 L. R.
A. (N. S.), 581. In that case Mrs. Eaden sued to recover
damages for personal injuries caused by the act of the
fireman on the engine of a passing train who, as she
averred in her petition, "recklessly, negligently and
wantonly" threw a shovelful of burning cinders and
ashes into her face, when she was standing at or near a
private crossing, and at a time when the fireman knew of
her presence at the place she was standing. In the course
of the opinion the court said:

"It is too well settled to require argument that, if
the employe of appellant knew of appellee's position on
the right-of-way of the corporation, he was then bound
to exercise at least ordinary care to avoid injuring her.
It is immaterial, therefore, whether she stood at or near
the crossing. In either case, if the employe knew of her
danger, the corporation is liable.    *    *    *    Here, if ap-
pellee's testimony be true, the fireman was engaged in
throwing out ashes and embers from the engine, thus
discharging a duty he owed his employer, and, if, while
so doing, he recklessly and wantonly injured her, we see

no reason for exempting the corporation from liability for the wrongful act of its employe."

In Willis v. Maysville R. R. Co., 119 Ky., 949, same case 122 Ky., 658, the suit was brought to recover damages for injuries inflicted by a lump of ice that was thrown from a passing train of the railroad company out in a street on which the injured party was standing near the railroad track. In the opinion the court said:

"The question here presented is, was the brakeman, in removing the ice from the caboose platform, acting in the performance of a duty arising from his employment, or the apparent scope thereof? If he was, and his act in ridding the train of the ice was so negligently performed as to result in injury to appellant, appellee would be liable therefor. It is usually a matter of some difficulty to determine what acts of an agent are or are not within the apparent scope of his agency of employment, for which reason courts generally hold that the question is one of fact, to be determined by a jury."

With the law of the case thus settled, the remaining question is, was there sufficient evidence to show that the person who pitched the lump of ice from the car was at the time acting in the scope of his duties as an employe of the railroad?

Counsel for the railroad company insist (1) that the evidence was not sufficient to show that the person who pitched the ice did so in the performance of any duty within the scope of his employment, and (2) that in pitching the ice he was actuated by a private purpose to wilfully injure Petrey, and, this being so, his employer was not liable for his personal, intentional, wrongful act.

The railroad company did not introduce any evidence on the trial of the case, but it was shown by the evidence for Petrey that the railroad company furnished ice for the use of its agents at stations along the line of its road, including Nott, and that the train from which this lump of ice was pitched was the train upon which the company carried ice to be delivered to its agents. It was further shown that the person who pitched this lump of ice was standing in the car in which ice for these agents was carried, and that he was dressed in the uniform of an employe of the railroad company. Petrey also testified that the person who pitched the ice saw him standing by the side of the track at the time and before he pitched it.

This evidence, although not as full or satisfactory as it might be, was sufficient, we think, to show that the person who pitched the ice was an employe of the company; that the ice was intended for use by the agent at Nott, who, it appears, did not get any ice from this train on that morning; that in throwing out the ice, this employe was acting in the performance of a duty enjoined on him by the company and within the scope of his employment; and that he discovered the presence of Petrey immediately before he threw the ice and in time to have prevented striking him. The mere circumstance that the ice was thrown off before the train reached the station of Nott is not so material as the fact that this ice was intended for the station at Nott and that in throwing it off the employe was discharging a duty he owed to put this ice off for the use of the agent at this station. Of course, the evidence is not conclusive of the existence of either of these facts upon which the right of recovery depends, but it was sufficient to leave the question of their existence to a jury, as was done in the instruction quoted.

Counsel for the railroad company attempt to bring the case under the rule announced in Sullivan v. L. & N. R. R. Co., 115 Ky., 447; Ballard's Admx. v. L. & N. R. Co., 128 Ky., 826; C. N. O. & T. P. Ry. Co. v. Rue, 142 Ky., 694; and C. & O. Ry. Co. v. Ford, 158 Ky., 800, in which cases it was found there could be no recovery by the injured party because the act of which he complained was either intentionally or maliciously done, or the servant of the company in doing it was acting outside of the scope of his employment and not in the performance of any duty he owed to the master.

Having the view heretofore expressed, that the act of which Petrey complains was performed by the servant of the company in the course of his employment, it follows that the doctrine laid down in these cases does not control the one we have.

Another ground of reversal relied on is that the damages are excessive. The evidence shows that for many years previous to this accident the leg of Petrey, which was broken by the impact of the ice between the knee and ankle, had been practically worthless to him on account of a paralytic stroke, and as the case must be reversed, we will not, on the record before us, express any opinion as to the excessiveness of the verdict.

There is, however, a material error in the record for which the judgment must be reversed. It appears from the bill of exceptions that on the panel of eighteen jurors qualified by the court and tendered the parties from which to select a jury for the trial of the case, there were fourteen bystanders whose names had not been drawn from the drum or wheelcase, and that ten of these men—naming them—were summoned at one and the same time from bystanders to fill vacancies then existing in the panel, and four of them—naming them—were summoned as bystanders, to fill other vacancies in the panel. It further appears from the bill that "after the panel of eighteen jurors had been so qualified and tendered, thereupon the defendant, by attorney, challenged the panel as a whole and each of the said fourteen jurors, for cause in that each of them was a bystander; and, further, in that the name of neither thereof was or had been drawn from the drum or wheelcase; and the court, after due consideration of the challenge so taken and made by the defendant, and being advised in relation thereto, overruled same, to which action and ruling of the court defendant excepted at the time and still excepts."

This identical question has come before us in a number of cases from the circuit district of which Whitley county is a part, and we have uniformly ruled that to compel a litigant to try a case before a jury so selected and impaneled as was the one in this case, is reversible error: L. & N. R. R. Co. v. King, 161 Ky., 324; L. & N. R. R. Co. and Jones v. Owens, 164 Ky., 557; Trosper Coal Co. v. Rader, 166 Ky., 797; and we must adhere to this ruling, although it does not affirmatively appear, and, indeed, could not well be made to appear, that the defendant did not secure as fair a trial before this jury of bystanders as he could have secured before a jury drawn in the manner pointed out by the statute.

In L. H. & St. L. Ry. Co. v. Schwab, 128 Ky., 82, in answer to the argument here made that the substantial rights of the complaining party were not prejudiced, the court said: "The record does not disclose that the members of the panel from which the jurors were selected to try the case were in any respect objectionable, and in this particular the substantial rights of appellants were not prejudiced by the rulings of the trial court, but, in a matter that strikes at the very foundation of our system of selecting jurors, we do not deem it material or necessary

that any prejudicial error shall be made to appear, other than a substantial one committed in failing to select the juries in the manner pointed out in the statute. It is probable that the jurors selected to and that did try this particular case were men who possessed all the statutory qualifications; and it may also be conceded that they were entirely acceptable to counsel and parties on both sides. But back of this is the more important question that litigants have the unqualified right to demand that juries shall be selected in the manner prescribed in the statute, and in passing on this right the individual qualification of the juror or the fact that he may be entirely acceptable to the parties is not to be considered. If the contention of appellee were sound, the careful and elaborate scheme devised for selecting juries would be nullified, the statute would be a dead letter, and no inquiry could be made into the manner in which jurors were originally chosen, if those selected to try the particular case possessed the statutory qualifications and were personally satisfactory.''

For the reason indicated, the judgment is reversed, with directions for a new trial consistent with this opinion.