ARKANSAS LIGHT & POWER COMPANY *v.* JACKSON.

Opinion delivered December 8, 1924.

1. MASTER AND SERVANT—RES IPSA LOQUITUR DOCTRINE.—In an action for the death of an employee who was electrocuted while opening a switch to cut off the current of electricity, the line and apparatus being under the control and management of the employer, the doctrine of *res ipsa loquitur* was applicable, in the absence of any proof that he was negligent in the manipulation of the switch handle.

2. MASTER AND SERVANT—RES IPSA LOQUITUR DOCTRINE.—The doctrine of *res ipsa loquitur* does not relieve plaintiff of the burden of proving negligence, but merely defines the conditions

under which a *prima facie* showing of negligence has been made, and requires defendant, having custody and control of the agency causing the injury and an opportunity to make examination to discover the cause, to furnish an explanation, in order to overcome the plaintiff's *prima facie* showing of negligence.

3.  MASTER AND SERVANT—CAUSE OF DEATH JURY. QUESTION.—In an action for the death of an employee, the question whether the employee was electrocuted by instrumentality under the control and management of the employer, so as to render applicable the doctrine of *res ipsa loquitur, held* for the jury as against the contention that the cause of death was matter of speculation.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*T. D. Wynne,* for appellant.

The court erred in not directing a verdict in favor of defendant. 51 Ark. 468; 46 Ark 555; 79 Ark. 437; 105 Ark. 161. Negligence cannot be inferred merely from the occurrence of an injury. 51 Ark. 467; 74 Ark. 19; 105 Ark. 161. The burden of proof was upon the injured servant to show negligence on the part of the master. 105 Ark. 161; 44 Ark. 524; 79 Ark. 437; 133 Ark. 336; 179 U. S. 658; 222 Mo. 488. Juries are not permitted to rest a verdict purely upon speculation, but there must be testimony which warrants a finding of the essential facts or which would warrant a reasonable inference of the existence of those facts. 109 Ark. 206; 76 Ark. 436; 105 Ark. 161. An employee assumes all obvious risks of the work in which he is employed. 95 Ark. 563; 90 Ark. 407; 82 Ark. 11; 79 Ark. 20; 67 Ark. 209; 56 Ark. 206. Negligence of the company could not be inferred merely from the occurrence of the accident. That must be proved, and the burden of establishing it is on the party who alleges it. 82 Ark. 372; 67 Ark. 437; 100 Ark. 467; 93 Ark. 153; 98 Ark. 222; 79 Ark. 437; 90 Ark. 331; 87 Ark. 196; 74 Ark. 22. Conflict in instructions is always error, and must be adjudged prejudicial. 74 Ark. 437; 76 Ark. 224; 65 Ark. 65; 83 Ark. 210; 94 Ark. 282.

*J. L. Bittle and D. D. Glover,* for appellee.

When the injury and circumstances attending it are so unusual and of such a nature that it could not have

happened without the company being negligent, the burden is on the company to show that its negligence did not cause the injury. 139 Ark. 495; 118 Ark. 218; 77 Ark. 491; 121 Ark. 351; 140 Ark. 148; 89 Ark. 588; 54 Ark. 209; 57 Ark. 418; 57 Ark. 429; 61 Ark. 381; 78 Ark. 426; Keasey on Electric Wires, § 271; 57 L. R. A. 624; 31 L. R. A. 556; 82 Md. 293.  While a servant assumes all the ordinary risks incident to the service in which he is employed, he does not assume any risk caused by the master's negligence. 98 Ark. 227; 95 Ark. 291; 87 Ark. 396.

SMITH, J.  Appellee, in his own right and as administrator of the estate of Rudolph Jackson, his son, instituted this suit to recover damages on account of the death of his son, who met his death while in the employ of appellant on the 31st day of January, 1923.

Deceased, at the time of his death, was eighteen and a-half years old, and had been employed by the defendant light and power company as an electrician for about two years.  The testimony shows that deceased was a promising young man, who had had a course in an electrical school, and who, because of his training and experience, was considered a very valuable employee.  At the time of his death he, with other employees, was engaged in completing the installation of a transformer substation for the appellant company at Malvern, Arkansas. Deceased had been engaged in the construction and installation of this job for about a month prior to his death. The transformer substation at Malvern, it was shown, is constructed by use of cedar poles or creosoted pine, which are approximately thirty-five feet in height and placed in the ground to the depth of six feet.  These poles are arranged in rows of three each.  The transformers are between said poles, resting upon concrete pedestals up above the ground some distance.  The whole equipment consists of the poles, transformers and air-brakes. The air-brake switch is located on top of the poles twenty-five feet above the ground.  There is a galvanized rod extending from near the switch at the top of the poles

down to near the ground. This rod, in some way, articulates with the switch on top of the poles. To this rod is attached, at or near the bottom, an iron socket, into which socket a wooden handle is placed to open or shut the switch at the top. To open the switch you pull down on the switch handle. To close the same you pull up on the switch handle. The instant the switch is open, the current is shut off. The switches are covered with heavy porcelain insulators, and are of standard make.

On the day the fatal accident occurred, the employees, including the deceased himself, were making some adjustments of a minor nature, preparatory to the completion of the installation job at Malvern. Jackson was directed to throw one of the switches in order to cut off the current. He had done this before, and was familiar with the operation of the instrument used for that purpose. In opening the switch he stood upon earth, which was damp, and which some of the witnesses referred to as muddy. The order to open the switch was given by the foreman, and was executed in the latter's presence, and, when Jackson took hold of the wooden handle placed in the socket attached to the galvanized rod and pressed down the handle, thereby opening the switch to cut off the current, he fell instantly in his tracks to the ground. Medical attention was had at once, and the attending physician made strenuous efforts to revive Jackson, and, although his heart continued to beat for about an hour, he was never revived, and never regained consciousness. It is the theory of the defendant that, as Jackson fell, he struck his head against a timber lying on the ground; but the question in the case is, what caused him to fall?

The testimony on the part of the defendant is to the effect that Jackson was not electrocuted. According to this testimony, the mechanism was in perfect order. There was only one way to operate the lever in opening or closing the switch, and it was operated in that manner by Jackson, and this manner was safe and free from danger. In other words, according to the testimony on behalf of defendant, Jackson was not electrocuted, and could not have been.

But he was killed; he dropped in his tracks, and would, no doubt, have died in a few moments but for the efforts to resuscitate him. The doctor who attended Jackson testified that he was familiar with electrical burns, and expressed the opinion that Jackson had been electrocuted. He testified that he found a discoloration on the back part of Jackson's neck, beginning on the right side and extending down the spine. He also testified that he found a bump on the back of Jackson's head, but he did not attribute death to that cause, as there had been no hemorrhage such as would have followed from a blow of sufficient force to have produced the condition in which he found Jackson. There was also testimony to the effect that the glove which Jackson wore when he opened the switch was burned.

The case made for the jury may be summed up as follows: There was no testimony that Jackson had manipulated the lever in an improper way, and the defendant's testimony was to the effect that the mechanism which he operated was perfectly safe, and that he could not have been electrocuted by merely opening the switch, yet the testimony on the part of the plaintiff abundantly supports the theory that Jackson was electrocuted.

The court gave, over the objection of the defendant, an instruction numbered 7, which reads as follows: "You are instructed that, where injury or death is caused by a thing or instrumentality that is under the control or management of the defendant, and the injury or death is such that, in the ordinary course of things, would not occur if those who have such control or management use proper care, the happening of the injury is *prima facie* evidence of negligence, and shifts to the defendant the burden of proving that it was not caused through lack of care on defendant's part."

The applicability of this instruction presents the real question in the case.

In the case of *Chiles* v. *Fort Smith Commission Company,* 139 Ark. 489, we quoted cases holding that, while the doctrine of *res ipsa loquitur* had ordinarily been

applied in suits against carriers, there was no sound reason for limiting it to such cases, and that the presumption expressed by that maxim originates from the nature of the act causing the injury, and not from the nature of the relation between the parties, and that the presumption arises from the inherent nature and character of the act causing the injury. We there quoted with approval from § 156 of the chapter on Negligence in 20 R. C. L., the following statement of the law: "More precisely the doctrine *res ipsa loquitur* asserts that, whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as, in the ordinary course of events, does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery, in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. * * * The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitles him to a favorable finding, unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application."

See also *Choctaw, O. & G. R. Co.* v. *Doughty*, 77 Ark. 1, which was a suit by the servant against the master.

The case of *Southwestern Tel. & Tel. Co.* v. *Bruce*, 89 Ark. 581, was a suit by a carpenter who was engaged in repairing a barn, but was not employed by the telephone company. One of the company's wires broke and burned the plaintiff, and he sued for damages. There was no satisfactory explanation of the cause of the injury. It was there said:

"And, where the defendant owes a duty to plaintiff to use care, and an accident happened causing injury, and the accident is caused by the thing or instrumentality

that is under the control or management of the defendant, and the accident is such that, in the ordinary course of things, it would not occur if those who have control and management use proper care, then, in the absence of evidence to the contrary, this would be evidence that the accident occurred from the lack of that proper care. In such case the happening of the accident from which the injury results is *prima facie* evidence of negligence, and shifts to the defendant the burden of proving that it was not caused through any lack of care on its part (Cases cited).

"Now, this rule applies to electric companies in the control and management of their lines and apparatus, for the further reason that they have almost exclusive knowledge of the facts relative thereto. The plaintiff ordinarily has not the power or opportunity to test these lines and apparatus; and it is reasonable that the party having the power and opportunity should be required to give an explanation of the accident, and to prove that it did not occur through a lack of care on its part" (Cases cited).

We think the doctrine of that case is applicable here. If there had been testimony that Jackson was injured by the negligent or improper manipulation of the lever, the doctrine would be inapplicable, but it is not contended that he was. If Jackson was electrocuted, and the other instructions required that the jury should so find before returning a verdict for the plaintiff, there was a cause for it other than the manner in which Jackson operated the lever. His act in so doing would not have caused his death if there had not been something wrong somewhere. The plaintiff had no opportunity and was not required to test the line and the apparatus conveying the deadly current. These were under the control and management of the company, and the conditions were therefore present which make the doctrine applicable.

This instruction does not tell the jury there was a presumption of negligence from the mere occurrence of the injury, nor did it relieve the plaintiff from the burden of proving negligence. The burden of proof to estab-

lish negligence was on the plaintiff, and the instruction did not shift this burden. Under the undisputed evidence the deceased was guilty of no negligence, and no attempt was made to show that he was guilty of any negligence.

The instruction required the jury to find that the instrumentality which caused deceased's death was under the control or management of the defendant; and, further, that no injury would have occurred if the defendant, having the control and management of the appliance, had used proper care; and declared the law to be that, this having been proved, the plaintiff had *prima facie* discharged the burden of proving negligence; and, having thus shown *prima facie* that the injury would not have occurred but for the defendant's negligence, the burden then shifted to defendant to account for the cause of the injury by showing that its negligence was not responsible for it.

The doctrine of *res ipsa loquitur* does not relieve the plaintiff of the burden of proving negligence; it merely declares the conditions under which a *prima facie* showing of negligence has been made, and, where this has been done, the defendant having the custody and control of the agency causing the injury and the opportunity to make the examination to discover the cause, must furnish the explanation which this opportunity affords to overcome the *prima facie* showing made by the plaintiff. Such is the purport of the instruction, as we understand it, and no error was committed in giving it under the facts of this case.

It is urged that a verdict should have been directed for the defendant on the ground that the cause of Jackson's death was a mere matter of speculation and conjecture. But we think it sufficiently appears from the facts herein recited that the jury might have found that Jackson was electrocuted, and that this was done by some agency or instrumentality under the control and management of the defendant, and a case was therefore made for the jury.

Some other questions are presented that involve the application of the law in regard to master and servant which we do not think require discussion.

Finding no error, the judgment is affirmed.