St. Louis-San Francisco Railway Company *v.* Smith.

Opinion delivered October 6, 1930.

E. T. *Miller* and *King, Mahaffey, Wheeler & Bryson,* for appellant.

*Sizer & Gardner* and *John E. Harris,* for appellee.

Smith, J. This is a suit brought under the Federal Employers' Liability Act, to recover damages for the alleged negligent killing of appellee's intestate. In the opinion on the former appeal, reported in 179 Ark. 1015, a narration of the facts will be found, with a statement of the law governing the case, and no useful purpose would be served by a review of either the law or the evidence, and only such portions of the testimony will be reviewed as are necessary to determine the questions raised on this appeal which were not decided on the first appeal.

It was there adjudged that the verdict and the judgment thereon were without substantial testimony to support them, and that decision is, of course, the law of this case; and the judgment recovered on the remand of the cause must be reversed unless additional substantial testimony was offered which did not appear in the first trial tending to show liability.

The suit was prosecuted upon the theory that deceased and W. O. Rhodes, who were both brakemen employed in the operation of one of appellant's freight trains, were about to make a "kick switch." The portion of the train then in motion consisted of an engine, three

cars and a caboose, and both deceased and Rhodes were riding on the caboose preparatory to making the kick, and deceased went from one end of the caboose to the other to uncouple it from the engine and the three cars, under the orders of the conductor in charge of the train, and, while so engaged, Rhodes, while standing on the steps of the caboose at the opposite end from deceased on the engineer's side, negligently, and without seeing deceased, and without giving him warning that he was about to do so, gave the engineer the kick signal, which resulted in the engineer kicking the caboose, and that this unexpected acceleration of the movement of the train caused deceased to lose his balance and fall between the caboose and the cars from which the caboose had been uncoupled, and to fall on and across the track, and before he could rescue himself from this perilous position he was run over and killed by the cars which were following the caboose.

The train was being pushed by the engine, with the caboose in front, and the testimony shows that the kick switch was made by accelerating the movement of the train, uncoupling the caboose from the portion of the train following it, and then stopping the engine, or reducing its speed, so that the uncoupled caboose, of its own momentum, would run at a faster speed than the remainder of the train, and would thus run to the point where it was desired to stop it, and that the caboose would be stopped by another brakeman by means of the hand brake on the caboose.

The testimony shows that it was the duty of deceased to give the kick signal, pursuant to which the speed of the train would be accelerated and also to give the stop signal, which was the direction to the engineer to slow or stop the engine. This was true because deceased only was in position to know when the caboose had been uncoupled.

The testimony upon this question is not substantially different from that on the former appeal, which we held

to be insufficient to show that there had been any negligence on the part of any other employee in making the kick switch or, if so, that this negligence had been the proximate cause of the injury, the plaintiff being unaided by any presumption of negligence in cases arising under the Federal statute under the authority of which the case was prosecuted.

The engineer testified at the trial from which this appeal comes that two brakemen (deceased and Rhodes) were engaged in giving the kick signal, and that he received this signal from both at about the same time, and that he obeyed the signal in the usual and ordinary manner, and that he gave the same testimony on the former trial. Both the engineer and Rhodes testified that there was no violent or unusual or unexpected movement of the train, and it is certain that deceased knew the movement of the train about to be made, for he performed the indispensable service of uncoupling the caboose, without which action the kick switch could not have been made, and if deceased gave the signal for the kick switch it is immaterial that Rhodes also gave it at the same time. But, however this may be, there is no more testimony in the present record than there was in the former one that this was the proximate cause of deceased's death, and this question is concluded by that decision.

It is insisted, however, that the present record presents the question of discovered peril, which was absent in the former record. In reply to this insistence, it may be said that the pleadings allege no such cause of action, and no instruction submitted that issue to the jury. Moreover, the testimony did not warrant the submission of that issue to the jury.

The undisputed testimony shows that all persons concerned understood perfectly the movement of the train which the conductor had ordered, what its purpose was, and how it was to be accomplished. It was deceased's duty, after ordering the speed of the train to be accelerated by giving the kick signal, and after uncoupl-

ing the caboose from the remainder of the train, to throw the switch to the side track, to open that track for the cars from which the caboose had been uncoupled to enter the side track, and it was necessary for him to go to the switch stand to discharge that duty. He could have done this by leaving the caboose after uncoupling it and walking to the switch, or he could have ridden the caboose until it had reached a point on the main track opposite the switch, and then have stepped off. It was largely because the testimony was silent on this question that we held on the former appeal that there was no sufficient showing, unaided by any presumption, that the negligence of Rhodes, if any, was the proximate cause of deceased's death. The present record is equally silent. It is undisputed that all the employees knew that when the kick signal was given the speed of the train would be accelerated. This was the purpose of the signal, and that this speed would be continued until, in the judgment of the brakeman ordering the kick, sufficient momentum had been attained to carry the caboose to the place desired on the track where it was then running. When this had been done, a stop signal would be given, which would direct the engineer to slow down or stop the engine. It was the duty of deceased to give this stop signal, and he never gave it. It was therefore not the duty of the engineer to stop the engine or slow down its movement in the absence of a stop signal, unless he had discovered that, from some cause—any cause—deceased was in a position of peril. It is not insisted that the engineer saw the deceased in a position of peril. The insistence is that the light made by the lantern which deceased carried (the time was between two and three A. M.) disappeared from the view of the engineer, and that this was itself, a signal for an emergency stop, and that if a stop of that kind had been made, deceased might not have been run down by the cars which were following the caboose at a slower speed. Without stopping to determine whether it would ordinarily have been the duty of the engineer to make an emergency stop upon the disappearance of deceased's

light, in view of the fact that the signal light of Rhodes had not disappeared from the view of the engineer, it may be said that the engineer stopped the train promptly when he received the stop signal from Rhodes, but deceased had then been run over by the trucks of the first car following after the caboose and those on the front end of the second one. Rhodes testified that he gave the stop signal because deceased had not done so, and that it was necessary to give this signal to perfect the kick, but that he did not then know where deceased was or what had become of him. The speed of the train was never more than ten or twelve miles an hour, and the engineer did not run more than two-car lengths between the time the first signal to make the kick was given and the time when Rhodes gave the stop signal. Between the giving of these signals deceased was killed, and the testimony does not show that the engineer knew, or had any reason to believe, that deceased was in peril during that interval. It is true his light had disappeared from the engineer's view, but that of Rhodes had not. The engineer knew it was the deceased's duty to throw the switch, and if he had got off the caboose for that purpose after giving the kick signal the light might then have disappeared from the engineer's vision.

There was testimony to the effect that the ballast between the rails had been roughed up for a short distance near the place where deceased's body was found, but if it be assumed that this was done by deceased's body it was not shown how he got there, and he could not have been seen by the engineer because of the presence of the cars between the caboose and the engine.

There was, therefore, no issue of discovered peril in the case, even though that cause of action had been alleged—and it was not—nor was it, as we have said, submitted to the jury.

There appears, therefore, to be no additional substantial testimony not offered at the first trial, and, as we have held that it was not sufficient to carry the case to

the jury, and as it further appears that the case has now been fully developed, the judgment will be reversed and the cause dismissed.

HUMPHREYS, J., dissents.