MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* SHORES.

4-7789                    191 S. W. 2d 580

Opinion delivered January 7, 1946.

*Thomas B. Pryor, Thomas Harper* and *Harrell.Harper,* for appellant.

*Howell & Howell,* for appellee.

ROBINS, J. Appellee, "extra gang" laborer, while working on appellant's track, was struck and severely injured by a block of ice which fell or was thrown from a passing troop train. In his suit for damages against appellant a jury awarded him verdict for $4,000; and from judgment entered thereon this appeal is prosecuted.

These grounds for recovery were set up by appellee in his complaint:

1. That the railroad company's employees negligently allowed the doors of the baggage car to remain open while the train was running, and that it negligently caused or permitted the ice to fall therefrom.

2. That the company, its agents and servants negligently loaded the ice in the car "without securely fastening it therein to prevent it from falling therefrom."

3. That the railroad company "negligently failed to exercise ordinary and reasonable care to make reasonable inspection of the load thereon to determine whether or not same was reasonably safe there for transportation."

4. That the train was negligently operated at a high rate of speed over the track along which appellee and other employees were working.

Appellant's answer was a general denial and plea of contributory negligence.

The lower court, in its instructions, submitted to the jury as grounds for recovery only the alleged negligent

failure of appellant to load the ice properly and to make proper inspection as to the manner of such loading.

There was little, if any, conflict in the testimony. The troop train in question carried thirteen cars, consisting of (beginning from the rear) five Pullmans, two baggage cars used for kitchen cars, five more Pullmans and a baggage car next to the locomotive. Two officers and 365 enlisted men were on the train.

Ben Peevy testified for appellee that he was working in the gang with appellee about two and one-half miles east of Alma; that appellee was injured by ice that was pushed out of the wide door of a car in the train; that another member of his crew had been injured by ice coming from a train.

B. C. Burkett testified for appellee that he was the agent of appellant at Van Buren; that when a train filled with soldiers is carried between Little Rock and Van Buren it has the railroad's crew, consisting of engineer, fireman, conductor and flagman; that troop sleepers are owned by the government, Pullman cars are owned by the Pullman Company and the coaches are owned by the railroad company, and the equipment is owned by the government; that the movement of the train is under the control of the train crew; that the train itself is in charge of the troop or train commander.

Charles Patillo testified for appellee that he was working with appellee when he was struck by the ice; that he did not know who opened the door or who pushed the ice out; that some other ice came from the train a short distance back.

Appellee testified that he thought "it might be an empty troop train . . ."; that he "couldn't see anybody"; that the doors of the baggage car were open; that the ice came from an open door; that during the period he had worked on the track he saw things thrown from a train an average of once a week; that he didn't see this piece of ice until it hit his knee, but assumed it came out of the baggage car; that he did see the door

open when he looked up, but didn't know how long it had been open or who opened it.

H. H. Conger, chief clerk to assistant superintendent of appellant, testified for appellee that in the movement of troop trains the crew has nothing to do with the kitchen car; that the government equips it with any devices it wants to keep the soldiers from falling out; that what is within the car belongs to the government and the crew is only responsible for the safe operation of the train from one terminal to another; that the train commander is in charge; that at the time the kitchen car is ordered and placed at a point of origin the government will equip it with ice which belongs to the government; that if ice is needed the train commander will wire ahead and it is placed in the door and paid for by the commander; that the government takes charge of the car, loads it, puts ice in and the railroad company has nothing to do with loading or the manner in which it is loaded; that the train commander supervises the loading and the railroad company makes no inspection as to whether it is done in the proper manner, but leaves it all up to the government; that the train commander has probably had railroad experience; that this particular train originated at Ft. Bragg, North Carolina, from where it was carried to Memphis by the Frisco and there delivered to appellant, to be transported to Camp Gruber, Oklahoma.

Sam Manager testified for appellee that he was on the other (north) side of the track from appellee when appellee was injured; that as the train passed they threw out a lot of garbage on the south side and threw out pieces of ice; that he doesn't know who threw this stuff off.

H. M. Cook, a witness for appellant, testified that he was conductor on the train in question; that there were 365 men and two officers aboard the train; that there was a train commander who "is absolutely in command"; that the only time witness is in the kitchen cars is when there is an accident and he then notifies the military guards that he has to go through; that is the only time he

is permitted in the kitchen cars and this applies to the other trainmen on all military trains; that he knew nothing about the ice hitting anyone until he was subpoenaed to court; that the train commander is in charge of the kitchen car, the cooking and supplies, that witness has nothing to do with it; that when he took charge of the train he did not go into the cars and inspect the load, or the personnel, or the baggage or the contents of the car; that no member of the crew made such inspection; "we are not allowed to go through there unless something happens . . . that is up to the train commander."

Other members of the train crew gave testimony similar to that of Cook.

Railroad companies have been held liable for injuries to licensees or invitees caused by objects falling, or being thrown, from moving trains in these three classes of cases:

1. Where the injury is caused by an object being thrown from the train. In cases of this kind the liability is based on the negligent act of some employee done in the scope of his employment or done habitually with the knowledge of the company. *Fletcher* v. *Baltimore & Potomac Railroad Company*, 168 U. S. 135, 18 S. Ct. 35, 42 L. Ed. 411; *St. Louis, Iron Mountain & Southern Railroad Company* v. *Lavendusky*, 87 Ark. 540, 113 S. W. 204; *Maysville & B. S. R. Co.* v. *Willis*, 31 Ky. L. Rep. 1249, 104 S. W. 1016; *Louisville & Nashville Railroad Company* v. *Eaden*, 122 Ky. 818, 93 S. W. 7, 6 L. R. A., N. S. 581; *Louisville & Nashville Railroad Company* v. *Petrey*, 167 Ky. 223, 180 S. W. 370.

2. The "mailbag cases," in which railroad companies have been held responsible for the action of government mail clerks in throwing mailbags from a moving train thereby injuring persons lawfully on the premises of the railroad company, where it is shown that the careless practice of throwing the mailbags from moving trains has been habitually carried on with the knowledge of the railroad company. The liability of the railroad

company in such cases is not based on the theory of *respondeat superior*, but the carrier has been held answerable in these cases for negligently permitting a dangerous practice. *Huddleston* v. *St. Louis, Iron Mountain & Southern Railway Company*, 90 Ark. 378, 119 S. W. 280; *Missouri Pacific Railroad Company* v. *Angus*, 188 Ark. 300, 65 S. W. 2d 543; *Missouri Pacific Railroad Company* v. *Newton*, 205 Ark. 353, 168 S. W. 2d 812.

3. In cases where injury occurred by objects falling from trains, wherein liability was predicated on negligence of the railroad company in loading the car. *Gulf C. & S. F. Ry. Co.* v. *Wood* (Tex. Civ. App), 63 S. W. 164; *Croll* v. *A. T. & S. F. Ry. Co.*, 57 Kan. 548, 46 Pac. 972.

In the case at bar there was no proof that any employee of the railroad company pushed or threw the ice from the train, nor was there any proof that soldiers on troop trains, with the knowledge of the company, habitually threw ice or other objects from such trains. Therefore, no liability against the company, under the rule of *respondeat superior*, or under the dangerous practice theory, was shown by the evidence. So the lower court properly refused to permit the jury to find against the company on account of the negligence of anyone in pushing or throwing the ice from the car.

Now there was no evidence to show that the railroad company had anything to do with loading the ice which caused the injury, or as to the manner in which the ice was loaded. But, assuming that it did load the ice improperly or that it negligently failed to make inspection as to the manner of loading, there was no testimony whatever upon which to base a finding that improper loading was the cause of the ice falling from the train. So far as the testimony shows, this piece of ice may have been purposely or accidentally pushed from the train by some of the military personnel thereon. As a matter of fact, the testimony of appellee and his witnesses strongly indicated that someone in the car did push or throw the ice from the train.

Juries may make reasonable deductions from proved facts, but they may not base their findings on conjecture or speculation.

Judge BUTLER, in the case of *Magnolia Petroleum Company* v. *Bell,* 186 Ark. 723, 55 S. W. 2d 782, said: "It is well settled that the verdict of the jury based on mere conjecture or speculation . . . will not be permitted to stand."

In the case of *St. Louis-San Francisco Railway Company* v. *Smith,* 179 Ark. 1015, 19 S. W. 2d 1102, it is said: "Juries are not permitted to base verdicts on mere conjecture or speculation. There must be substantial testimony of essential facts, or facts which would justify a reasonable inference of such essential facts, on which to base a verdict, before it will be permitted to stand. *St. Louis, Iron Mountain & Southern Railway Company* v. *Smith,* 117 Ark. 655, 174 S. W. 547; *St. Louis, Iron Mountain & Southern Railway Company* v. *Belcher,* 117 Ark. 638, 175 S. W. 418; *Texas Co.* v. *Jones,* 174 Ark. 905, 298 S. W. 343."

It was not shown positively by the testimony whether this ice fell or was pushed from the train, nor was there proof to show who, if anyone, threw or pushed the ice, or permitted it to fall from the train. There was an entire absence of proof as to what caused the ice to come from the train. Under these circumstances the jury could not properly find that any negligent failure of the railroad company to load this ice properly or to inspect it after loading proximately caused appellee's injury.

The doctrine of *res ipsa loquitur* cannot be invoked in this case to supply the absent proof of negligence because it is necessary, before that doctrine may be applied, that the machinery or object causing the injury be shown to have been under the sole control of the one against whom liability is asserted. "It is essential to the application of the doctrine of *res ipsa loquitur* that it appear that the instrumentality which produced the injury complained of was at the time of the injury under the management or control of the defendant or his agents and servants.

546

. . . The doctrine does **not apply** where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury." 38 Am. Jur. 996; *Southwestern Telegraph & Telephone Co.* v. *Bruce,* 89 Ark. 581, 117 S. W. 564; *Arkansas Power & Light Company* v. *Jackson,* 166 Ark. 633, 267 S. W. 359; *Herndon* v. *Gregory,* 190 Ark. 702, 81 S. W. 2d 849, 82 S. W. 2d 244. In the case at bar, the evidence showed that the train and its passengers were under the control of an army officer, and that members of the train crew were not allowed to enter the baggage car, from which the ice came, without obtaining permission from the soldiers.

The lower court erred in not granting appellant's motion for an instructed verdict in favor of appellant.

The judgment of the lower court is reversed and, the case having been fully developed, it is dismissed.