## MISSOURI PACIFIC RAILROAD COMPANY ET AL. *v.* BOYD.

### 4-4672

Opinion delivered May 31, 1937.

R. E. *Wiley* and *Henry Donham,* for appellants.

T. W. *Campbell, W. F. Denman* and *Pace & Davis,* for appellees.

McHANEY, J. Appellee is the widow and administratrix of the estate of Charlie Boyd who was a locomotive fireman in the employ of appellants. On February 28, 1935, while engaged in his duties as fireman on a freight train, running from Little Rock to Texarkana, Mr. Boyd fell out of the cab of the locomotive and was

killed. Appellee brought this action against appellants to recover damages for his death and alleged negligence of the head brakeman who was riding in the "dog house," or brakeman's cab, on the back of the tender of the engine, in that the latter, to avoid dust from the coal, went to the cab of the engine, and by use of the squirt hose, wet down the coal and carelessly and negligently permitted water to run down or get on the apron between the cab and the tender and on the steps, which he negligently permitted to remain thereon, and that same froze, and formed a coating of ice on the apron and steps on which the fireman slipped and fell out of the cab, causing his death. Issue was joined on the negligence laid and trial to a jury resulted in a verdict and judgment for $20,000.

For a reversal of the judgment against it, appellant argues two assignments of error: 1. That the evidence is not sufficient to support the verdict and judgment, and that, therefore, the court should have directed a verdict in its favor at its request; and 2, that the deceased assumed the risk as a matter of law.

As to the contention that the evidence is insufficient to support the verdict, it is insisted that (a) the evidence fails to establish that the brakeman negligently spilled any water on the apron or deck of the engine while wetting down the coal; or (b) that ice formed on the apron of the engine from water spilled by the brakeman; or (c) that the fireman was caused to slip and fall by reason of ice on the apron or deck of the engine.

The following facts are undisputed: Appellee's intestate was 41 years of age and had worked for appellants nineteen years. He became a fireman in 1916, was promoted to engineer in 1925, but had been demoted to fireman during the depression. About 9:20 a. m., on February 28, 1935, the train left Little Rock for Texarkana. It was rather cold the night before and, at 9 a. m., the Government thermometer at Little Rock showed a temperature of 33 degrees and at 10 a. m., 39 degrees. The cab of the engine was provided with curtains on each side to shut out the cold air. When the train had reached

Bryant, some 12 miles north of Haskell, the head brakeman decided to and did wet down the coal, to prevent the coal dust from interfering with his visibility. The fireman turned on the water for him to do so with the squirt hose, and when he had finished the former cut the water off and replaced the hose. The brakeman then resumed his place in the "dog house." As the train approached Haskell a signal was seen that a train order was to be picked up on the run, without stopping. This was to be accomplished by the telegraph operator fastening the order to a hoop and handing it up to the fireman who would stand on the deck or apron of the engine, hold on to the grabiron with his right hand, lean outward and run his left arm through the hoop, thus getting the train order. The train was running 35 or 40 miles per hour. When the train was within about 200 yards of the operator with the order, he saw the fireman plunge out of the cab head first, striking his head on an adjacent track and receiving injuries from which he shortly died. The engineer did not see the accident, but soon discovered the absence of the fireman, stopped his train and backed up to the scene of the tragedy. A number of witnesses saw the fireman fall; some of them saw him leave his seat in the cab, open the curtain on his side of the cab and slip and fall out. A number of witnesses testified that icicles were hanging from the steps and deck of the engine and one witness testified he climbed up on the steps of the engine and saw ice on the apron which indicated that the fireman had slipped, as the ice was broken. The operator thought he remembered seeing icicles on the tank. The trainmen testified that they did not see any icicles on the steps, the tank or the deck of the engine. The engineer testified there was no ice on the deck or apron of the engine. The head brakeman testified there was no ice on the apron when he wet down the coal, and that he did not spill any water on the deck and that it could not run down on the deck from the coal. Under this state of the record, was a question of fact made for the jury?

The action was brought under the Federal Employer's Liability Act and recovery is sought under the

terms thereof alone. In such cases it is incumbent on the plaintiff to establish negligence by a preponderance of the evidence, and there is no statutory presumption of negligence by the fact that deceased was killed by the operation of a train. *St. L.-S. F. Ry. Co.* v. *Smith,* 179 Ark. 1015, 19 S. W. (2d) 1102; *New Orleans & Northeastern Ry. Co.* v. *Harris,* 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167. These principles are conceded by both parties. The principal bone of contention is whether appellee proved her case by showing that the head brakeman negligently spilled water on the apron which thereafter and within about 10 or 12 minutes formed ice on which deceased slipped and fell out of the cab. The brakeman says he did not. No one says he did. Do the attendant facts and circumstances contradict him, so as to make a jury question? In the first place, he cannot be said to be a disinterested witness. He was called by appellee, it is true, but only to establish the fact that he did wet down the coal, and he is an employee, charged with having committed the negligent act. He, also, said there was no ice on the apron when he wet the coal down. The engineer said there was no ice there at any time. But several witnesses at the scene of the accident say there was ice on the steps and at least one said there was ice on the apron. Unless we disregard the testimony of these witnesses, we cannot say there is no evidence that ice was on the steps and apron. If, as the jury has found, there was ice on the steps and apron, how did it get there, if not by the act of the brakeman in wetting down the coal? It is suggested by appellant that it may have gotten there when the fireman washed out the deck of the engine and wet down the coal before leaving North Little Rock, as was his usual custom and as the engineer testified. But he, also, testified there was no ice on the apron on that trip at any time and the brakeman said there was none when he wet the coal down. We think the jury had the right to conclude from these facts and circumstances, not only that there was ice on the steps and apron of the engine, but that the ice caused the fireman to slip and fall from the cab. The proof shows he was an efficient employee,

skilled in the work he was doing, careful and prudent in the performance of his duties. As we said in the Smith case, *supra*: ''There must be substantial testimony of essential facts, or facts which would justify a reasonable inference of such essential facts, on which to base a verdict, before it will be permitted to stand.'' Here the essential facts to be established were that water had been carelessly spilled on the apron of the engine by the head brakeman which formed ice and the decedent slipped on it and fell resulting in his death. There was substantial evidence that ice was there when decedent fell, that he slipped on the ice and these facts would justify the inference that the headbrakeman spilled the water carelessly and that this act was the proximate cause of the injury.

We do not think the rule announced in *Patton* v. *Texas & Pacific Ry. Co.*, 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 362, is controlling here. It was there said: ''It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. And without adding to or subtracting from the rule thus stated, we announce our approval thereof.''

Here, the evidence points to the fact that the employer was negligent through the act of the head brakeman, and the evidence fails to show that any one of a number of things may have brought about the injury. There is no evidence that decedent was suddenly stricken with vertigo, paralysis, or other disease; that his hand slipped from the grabiron or that he ever had hold of it; that there was a sudden lurch of the train; or that the track was uneven. On the contrary, all the evidence for appellee points to the fact that he slipped on the ice and

fell and that the ice was there by reason of the negligence of appellant.

We are also asked to say as a matter of law that the heat from the firebox of the boiler carrying 190 pounds pressure of steam would prevent the formation of ice on the apron extending back over the engine deck. Such a suggestion does seem reasonable. But the proof also shows that appellant provides foot warmers for the enginemen which would appear to be unnecessary, if the heat from the firebox would thus warm up the cab. This was a question for the jury and we are unwilling to say, as a matter of law, that ice could not be formed on the apron under the conditions stated. While the temperature when the train left Little Rock was barely above freezing and that an hour later it had continued to rise at Little Rock, there is no evidence as to what the temperature at Haskell was, except that several witnesses said it was freezing weather and that there was plenty of ice. One witness said it was cold enough to freeze the water in her car which had been drained the night before and refilled that morning, and that icicles formed from a leak in the radiator. In determining whether the evidence is sufficient to support the verdict, we must view it in the light most favorable to appellee, and, when so viewed, we cannot say there is no substantial evidence in this record to support it.

Finally, we are asked to say, as a matter of law, that appellee's intestate assumed the risk. We do not feel justified in so doing. It is so insisted because he turned on the water for the brakeman to wet down the coal with the squirt hose and turned it off when the latter had finished, and that "it is reasonable to conclude that if the water was spilled on the apron or the deck of the engine that the fireman observed it and knew it." Such a conclusion does seem reasonable, but this result does not necessarily follow. If it is not a necessary inference, it is a question of fact and not of law. This argument was, no doubt, made to the jury and it was a question of fact for its determination. The fireman had numerous duties to perform and the jury had the right to assume that

he was engaged in the performance of one or more of such duties while the brakeman was wetting down the coal. And it must be remembered that only a short period of time had elapsed between that act and the accident. The curtains to the cab were drawn, no doubt, shutting out some of the light, and we cannot say that the situation was one so open and obvious that the fireman must have known and realized the danger. As said by the Supreme Court of the United States, in *Chesapeake & O. Ry. Co.* v. *DeAtley*, 241 U. S. 310, 36 Sup. Ct. Rep. 564, 60 L. Ed. 1016, "the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

Counsel for appellants cite a number of cases to support the contention that the risk was assumed as a matter of law, among them being *Missouri P. Rd. Co.* v. *Lane*, 186 Ark. 807, 56 S. W. (2d) 175, and *Missouri P. Rd. Co.* v. *Martin*, 186 Ark. 1101, 57 S. W. (2d) 1047, both of which were written by the writer of this opinion, but we cannot agree that they are controlling here. To discuss them in detail would serve no useful purpose. A comparison of the facts in those cases with the facts in the case at bar will demonstrate their inapplicability.

We find no error, and the judgment must be affirmed. It is so ordered.

GRIFFIN SMITH, C. J., and FRANK G. SMITH, J., dissent.