SANDS, ET AL. RECEIVERS MISSOURI & NORTH ARKANSAS RAILROAD COMPANY v. LINCH.

Opinion delivered January 24, 1916.

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.—Plaintiff, an employee of defendant, was riding on a gasoline motor, belonging to defendant, and driven along the tracks of defendant by another employee. The motor car was derailed by striking a sheep, which was on the right-of-way, and which was seen a long way down the track before the accident. *Held*, under the evidence it was a question for the jury as to whether defendant was negligent in the handling of the motor car, which resulted in the injury.

2. MASTER AND SERVANT—INJURY TO SERVANT—BREACH OF STATUTORY DUTY—EVIDENCE OF NEGLIGENCE.—Act 165, Acts 1905, requiring a railroad company to maintain a fence along its right-of-way, while designed primarily for the protection of live stock, and for the benefit of the owners of such stock that might be injured by a failure to comply with the requirements of the act, nevertheless, where such failure is the proximate cause, or contributes proximately to cause a personal injury to an employee of the railroad company, or to any one else, a breach of the statutory duty may be shown as evidence of negligence on the part of the company, causing the injury.

Appeal from Carroll Circuit Court; *J. S. Maples,* Judge, affirmed.

STATEMENT BY THE COURT.

Appellee sued the appellants for personal injuries, alleging that he was employed by appellants as a bridge man and was riding along on appellants' track on a motor car that was in charge of a fellow employee, appellee having no duty to perform in relation thereto; that the car, through the negligence of these employees, was allowed to collide with a sheep by which it was violently thrown from the track, resulting in severe injuries to the appellee, which he described in his complaint; that it was appellants' duty, under the law, to keep its right-of-

way fenced so as to prevent sheep from getting on the track and that appellant had negligently failed to comply with that duty; that the employees had also failed to keep and maintain a careful lookout.

The appellants denied the allegations of negligence; admitted that it was their duty to maintain a fence along the right-of-way to keep stock off of the track, but alleged that the allegations of the complaint to that effect were surplusage, and moved to strike out such allegation. Appellants also set up the defenses of assumed risk and contributory negligence. The answer also contained a demurrer to that part of the complaint alleging that it was the company's duty to keep the right-of-way fenced. The demurrer to this allegation of the complaint was presented to the court and overruled.

The evidence, stated from appellee's viewpoint, and giving it the strongest probative force in his favor, tended to show that the appellee and several other employees of appellants who had been at work on appellant's bridge, at the conclusion of their day's work were traveling on a motor car to the section house. There were seven or eight men on the car. Henry Lenox was in charge of the operation of the car and Jeff Hubbs was running it. A flock of fifteen or twenty sheep was observed alongside the track, which, at that point, was enclosed on either side by a wire fence. When the sheep were sighted, under the directions of foreman Lenox the car was "slowed down." All of the frightened sheep went off of the right-of-way except two. These were within the enclosure going along by the side of the fence. Lenox then told the man who was running the car to "let her go," and it picked up speed and kept on increasing its speed until it struck the sheep. The motorman increased the speed under the direction of Lenox. He gave the order to put on more speed. At the time he gave this order the two sheep were inside the right-of-way. When the car struck the sheep all were thrown off, including the appellee, who was rendered unconscious and received the injuries for which he sues. From the point on the track where the car slowed down to the point where the accident occurred

it was some 250 or 300 yards. Appellee was sitting on the front part of the car on the corner.

The motorman testified that he could have stopped the car if he had known that everything was not in the clear, and that he would not have started the car at the high rate of speed if he had known there was a sheep on the right-of-way; that the sheep was on the foreman's (Lenox's) side and he ordered witness (the motorman) to increase the speed which he did at the time because he was thus ordered. The sheep began running through the fence all along and had all escaped except the two. One of these, about the time it got even with the car, hit a guy-wire and was thrown back and then headed for the track, making one or two jumps, and fell right on the rails, where the car hit it.

One of the witnesses stated that they were trying to make the hill and that the car would not hardly make the hill with nine or ten employees aboard unless it had a pretty good speed. There was nothing that could have been done after the car started up at the increased speed, ordered by the foreman, to have kept the same from being derailed when it struck the sheep.

Witness Bailey testified that these two sheep were seen all the way from the time they left the bunch up till the time the car was derailed. Witness was watching them all the time because they were on the same side of the track that witness was on. The foreman, Lenox, testified that he supposed he could see the right-of-way ahead of him as well as witness Bailey could.

There was testimony to the effect that sheep ran through the fence wherever they came to it near the place of the accident; that the posts were rotten and many of them were lying on the ground; that the company, through its section foreman, had been notified of this condition and requested to repair the fences, but that it failed to do so.

The court submitted the issue of the alleged negligence of appellants' employees in operating the car in instructions to which no objections have been urged here.

The court also gave instructions, to which appellants duly saved exceptions, telling the jury, in effect, that if appellants had not used ordinary care in maintaining the right-of-way fence and such negligence was a contributing cause of the injury, that appellee would not be chargeable with contributory negligence. And also instructed the jury that it was the duty of the company to keep the fence in good repair, under the statute, and that if the company failed to discharge its duty in that respect, which caused the injury to plaintiff, as the proximate result thereof, the company would be liable to him in damages.

The court refused appellants' prayer asking the court, in effect, to tell the jury that the appellants owed the appellee no duty to keep the right-of-way fenced or to keep it in repair, and that if appellee was injured by reason of such failure on the part of the appellants he would still have no right of action. Appellants duly excepted to this ruling of the court.

From a judgment in favor of appellee this appeal has been duly prosecuted.

*W. B. Smith, H. M. Trieber* and *J. Merrick Moore,* for appellant.

1. There was sufficient evidence to go to the jury to the effect that the accident was caused by the negligence of appellant in operating the car. 98 Ark. 202. Nor is there, as between co-employees any presumption of negligence. 74 Ark. 19; 98 *Id.* 19.

2. There is no law in this State for the protection of employees requiring appellants to fence their right-of-way. Act 165, Acts 1905. There was at common law no obligation upon railroads to fence their tracks for the protection of employees. 187 Fed. 393. See 55 Atl. 778; 15 S. W. 805; 160 Fed. 260-3. Statutes imposing burdens are strictly construed. Suth. on Stat. Const., § 290; 71 Ark. 561. The case should be reversed and dismissed.

*Festus O. Butt,* for appellee.

1. The peril was discovered in ample time to avert the accident.

2.   The fence law of 1905 is for the protection of persons.   15 S. W. 805, overruled in 143 S. W. 252; 48 *Id.* 168; 77 *Id.* 440; 60 Fed. 370; 111 U. S. 228; 172 Ill. 379. These fence laws give a right of action to an employee or passenger.   45 Mich. 74; 50 Ill. 151; 23 Wisc. 186; 54 Cal. 418; 13 Ill. 548; 64 N. Y. 524; 29 Md. 252; 124 Mass. 158; 119 N. W. 468; 62 Wisc. 411; 60 Mo. 475; 68 *Id.* 56 76 *Id.* 286; 79 *Id.* 349; 111 N. W. 279.

WOOD, J., (after stating the facts).   Appellants contend that there is no basis in the evidence for submitting to the jury the issue as to whether or not the appellants' foreman, in charge of the operation of the motor car, was negligent.   Giving the evidence its strongest probative force in favor of the appellee, the jury were warranted in finding that the car, at the time of the injury, was being propelled by the motorman under the directions of the foreman, Lenox; that the motorman would not have started up the car at the high rate of speed it was traveling at the time of the injury if he had known that there were still sheep on the right-of-way; that the foreman saw that these two sheep were still on the right-of-way, within the enclosure, when he told the motorman that the rail was clear and instructed him to ''let her go,'' that is, turn on the gasoline and increase the speed of the car; that the foreman, by the exercise of ordinary care, could have seen that the car, at its increased speed, was overtaking the fleeing sheep; that for a distance of 250 or 300 yards the car moved with its increasing speed until it overtook the frightened sheep; that at the time the sheep, dazed by contact with the guy-wire, jumped upon the track in front of the car while the same was going at too great rate of speed to avert the collision.   These facts, which the jury were warranted in finding from the evidence, justified their conclusion.   The evidence warranted these findings of fact, and made the issue as to whether the appellants were negligent in the manner of operating the motor car one of fact for the jury.

(2)   The undisputed evidence shows that the appellants negligently failed to comply with the requirements

of Act 165 of the Acts of 1905. Section 1 of that act requires that the St. Louis & North Arkansas Railway Company shall fence its right-of-way in the counties of Carroll, Boone and Searcy. Section 2 requires that the fence shall be built on both sides of the roadbed and anywhere on the right-of-way so as to prevent stock from crossing the tracks; that the fencing material shall be close enough to keep out of said enclosure, mules, horses, cattle, hogs, sheep and goats. Section 4 requires that the company shall keep the fences in good repair, and provides that when in such condition the company shall not be liable for any stock killed or injured on the tracks so fenced; but if any stock is killed or injured on the tracks when the fence is not in good condition on account of the negligence of the company, the company shall be liable in damages in double the value of the animal so killed or injured. Section 5 renders a violation of the act a misdemeanor and fixes a fine of not less than $50 nor more than $500 for failure to comply with same.

The instructions given and refused by the court presented the issue as to whether or not a negligent failure on the part of the railroad company to comply with the terms of the act, with the injury to the appellee as the proximate result of such failure, would render the company liable to the appellee for damages on account of such injury. The appellant contends that the act was not passed for the protection of the employees, but was passed to prevent injuries to and the killing of stock and was designed exclusively for the benefit of owners of live stock in the localities affected and who were damaged by reason of having their live stock killed or injured on account of a failure of the company to comply with the requirements of the statute. In *St. Louis & S. F. Rd. Co.* v. *Kitchen,* 98 Ark. 507-516, we had under consideration a similar statute of Oklahoma. The court said: ''It has been decided, under similar statutes, that the requirement is supposed to have been intended for the protection of all persons upon railroad trains who are exposed to dangers of travel, and that the person injured by reason of the omission to comply with the statute was

entitled to recover on account thereof." *Mo. Pac. Ry. Co.* v. *Hames,* 115 U. S. 522.

While the statute was designed primarily for the protection of live stock and for the benefit of the owners of such stock that might be injured by a failure to comply with the requirements of the act, nevertheless where such failure is the proximate cause or contributes proximately to cause a personal injury to an employee of the company, or anyone else, a breach of the statutory duty may be shown as evidence of negligence on the part of the company causing the injury. This principle is recognized in *Hayes* v. *Michigan Cent. Rd. Co.,* 111 U. S. 228. There the railway company, by municipal ordinance, was required to erect a fence upon the line of its road within the corporate limits for the purpose of protecting against injury to persons, and the court held that one who was injured by a failure to comply with the ordinance might recover if he established that the accident was reasonably connected with the want of precaution as the cause of the injury. Although the ordinance in that case was designed for the protection of persons generally against personal injury, yet the court shows that the same principle applicable under such an ordinance or statute is also applicable under those statutes that are passed for the protection of animals and for the benefit of their owners. For the court says: "In the analogous case of fences required by the statute as a protection for animals, an action is given to the owners for the loss caused by the breach of the duty. And although in the case of injury to persons by reason of the same default, the failure to fence is not, as in the case of animals, conclusive of the liability, irrespective of negligence, yet an action will lie for the personal injury, and this breach of duty will be evidence of negligence." See also in this connection *Bain* v. *Ft. Smith Light & Tr. Co.,* 116 Ark. 125, 172 S. W. 843; *Pankey* v. *L. R. Ry. & Elec. Co.,* 117 Ark. 337, 174 S. W. 1170-73.

In the case of *Atchison, T. & S. F. Ry. Co.* v. *Reesman,* 60 Fed. 370, the Court of Appeals had under review, in an action by an individual to recover damages for per-

sonal injuries, a statute of Missouri in purport very similar to the one now under review, and the court held that where an employee on the train was injured by a derailment caused by an animal getting on the track through the failure of the company to erect and maintain fences as the statute required, the company was liable. The court, through Mr. Justice Brewer, after stating the contention of the company, being the same contention as that of appellants here, said: "It is doubtless true that when a right is given by statute only those to whom the right is in terms given can avail themselves of its benefits, but it does not follow that when a duty is so imposed, a violation of that duty exposes the wrong-doer to liability to no person other than those specifically named in the statute. On the contrary, it is not unreasonable to say that every party who suffers injury by reason of the violation of any duty is entitled to recover for such injuries. At any rate, it is clear that the fact that certain classes of persons were intended to be primarily protected by the discharge of a statutory duty will not necessarily prevent others, neither named nor intended as primary beneficiaries, from maintaining an action to recover for injuries caused by the violation of such legislative command."

While there are authorities to the contrary, we are of the opinion that the weight of authority in this country is in favor of the rule above announced by the Court of Appeals of the Eighth Circuit, which is in accord with what we held in *St. Louis & S. F. R. Co.* v. *Kitchen, supra.* See many other cases cited in the brief of counsel for the appellee.

The judgment is therefore in all things correct, and it is affirmed.