MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE v. EUBANKS.

4-8286                                              207 S. W. 2d 610

Opinion delivered January 12, 1948.

*T. B. Pryor* and *Daggett & Daggett,* for appellant.

*John C. Sheffield,* for appellee.

SMITH, J. Appellee filed this suit against Guy A. Thompson as receiver, and trustee for the Missouri Pacific Railroad Company and Mrs. Charles Keene, to recover damages to compensate an injury which he alleged was sustained through the joint and concurring negligence of the railroad company and Mrs. Keene.

Appellee at the time of, and for four years prior to the time he sustained the injury which forms the basis of this suit was employed as a brakeman by the railroad

company. The train on which he was employed when injured, was a local freight train, several cars of which were moving in interstate commerce, and the suit was brought under the Federal Employers' Liability Act of Congress, April 22, 1908.

The complaint alleges and the testimony shows that at about 6:30 p. m., on November 24, 1945, appellee was employed as head brakeman in switching a freight train at Elaine, Arkansas. The night was dark, but the weather was clear.

The railroad depot is east of the railroad tracks, and there are three tracks between the depot and the state highway which parallels the railroad on the west. The first track west of the depot is the house track, the next the main line track, and the third is the passing track. The highway is about 100 or 125 feet west of the passing track, and runs through the town of Elaine. The principal street of the town, after crossing the highway at a right angle, proceeds east and crosses the railroad tracks at a point about 100 or 125 feet north of the depot. This is also a right angle crossing. A photograph offered in evidence, as well as the testimony of the witnesses, shows that the distance from the junction of the highway and the street to the railroad crossing is about the same as that from the depot to the railroad crossing. The depot is south of the railroad crossing.

The freight train went into the passing track for two purposes, one being to spot a car so that local freight destined to Elaine might be unloaded, and the other was to allow a southbound passenger train then about due at Elaine to pass on the main line track.

Appellee detailed the circumstances of his injury as follows: The train was heading in the passing track, which was about one mile long, and would accommodate about 100 cars. He was working ahead of the engine and got down to throw the switch so the train could go into the passing track. As the engine approached the crossing he saw a car which Mrs. Keene was driving, coming north down the highway parallel to the railroad tracks, but he did not pay much attention then. The car turned

at the junction of the highway and the street, and proceeded east to the railroad crossing. He was on the east, or the engineer's side of the engine and when the engine was about twenty feet or more from the crossing he saw the car coming down the street towards the railroad crossing when he swung out to flag the car down with his lantern. The car was about seventy-five feet from the crossing when he began flagging it. He continued to wave his lantern until he thought the car had stopped, when he turned around to see what the brakeman was doing, whose duty it was to spot the car and give him a signal which he would communicate to the engineer to stop the train, and when he turned around he was pinned between the engine and the car. He had been standing on the step in front of the engine and held the grabiron of the engine while he was flagging the car, and which he continued to do until he thought the car had stopped.

It was necessary to "cut" the train, by which was meant to leave a portion of it north of the crossing and the remainder south of it, to leave the street open for traffic.

Mrs. Keene lived near Elaine and was thoroughly familiar with the location of the highway and the streets and the railroad crossings. She was riding in a borrowed car with a lady companion. The windows of the car were closed and Mrs. Keene and her companion were engaged in conversation. Mrs. Keene testified that she did not see the brakeman whose place would have been on the left side of the engine, the side which she approached as she neared the crossing, and she expressed the belief that the fireman was not in the cab. It is certain that she did not see the fireman as she did not see the train. The theory of the case is that if the fireman had been in his place, keeping a lookout, he would have seen the car and given warning by ringing the bell. Both Mrs. Keene and her companion testified that the bell was not rung, nor was the whistle blown.

Three grounds of negligence are alleged against the railroad company; (1) that a proper look-out was not

kept; (2) that signals were not given and (3) that proper care for Mrs. Keene's safety was not exercised after her peril had been discovered or should have been discovered.

Two verdicts were returned. One assessed damages against the railroad company in the sum of $7,500 and the other assessed damages against Mrs. Keene in the sum of $2,500. She satisfied the judgment against herself and the railroad company has appealed from the judgment against it. Mrs. Keene very properly satisfied the judgment which had been rendered against her, as the testimony shows beyond question that she was negligent, indeed we have reached the conclusion that her negligence was the sole proximate cause of the injury and that the judgment against the railroad company must be reversed and the cause dismissed as to it.

The great preponderance of the testimony is that signals were given. Indeed appellee himself so testified. He was confined in the railroad hospital from the date of his injury until January, and was unable to resume his employment for some months thereafter. While confined in the hospital in January there was a joint investigation under the railroad rules as to the manner in which appellee was injured. He testified that at that time his recollection was very distinct. Asked then about the signals he answered, "I said and I still believe that he (the engineer) gave the crossing signal just as we were easing into the passing track." He did not deny making this statement at the trial, nor did he deny its truth, but he did qualify it by saying that the whistle was blown "not at the crossing, it was back just before he got to the depot." As has been said the depot is about 120 or 125 feet from the crossing. The effect of such testimony as that given by appellee himself is the subject of the extensive note to the case of *Kanopka v. Kanopka,* 154 Atl. 144, 113 Conn. 30, appearing in 80 A. L. R. 619. The effect of the cases cited in the annotator's note as stated by the annotator, is that a party may not complain that his own testimony was believed when it was not given under some mistake or misapprehension, and we think appellee cannot complain that we accept

his testimony as true that a signal was given, although other witnesses testified that if given, they did not hear it.

But it is certain and undisputed that a signal was given, although Mrs. Keene and her companion did not see it, and this signal was given by appellee himself when he waved his lantern and continued to wave it as the car approached the crossing until he thought the car had stopped. This was appellee's own testimony.

The testimony given by appellee himself disposes also of the question that no proper lookout was kept. There was a lookout, and appellee was keeping it, and he was doing so effectively. He was riding on the front of the engine as it approached the crossing, and he gave the engineer no signal to stop the train because he thought the car had stopped. This testimony disposes also of the contention that the doctrine of discovered peril applies. If there was any negligence in this respect, it was that of appellee himself, and he may not base his cause of action upon his own negligence.

In the case of *St. L.-S. F. Ry. Co.* v. *Smith,* 179 Ark. 1015, 19 S. W. 2d 1102, we said:

"Since this suit was brought and prosecuted under the Federal Employer's Liability Act, which does not define negligence, the question as to the sufficiency of the evidence to establish negligence must be determined by that act and the applicable principles of the common law as construed by the Federal Courts. *Mo. Pac. R. Co.* v. *Skipper,* 174 Ark. 1083, 298 S. W. 849. As said by the Supreme Court of the United States in *Atlantic Coast Line R. Co.* v. *Davis,* 279 U. S. 34, 49 S. Ct. 210, 73 L. Ed. 601: 'It is unquestioned that the case is controlled by the Federal Employers' Liability Act, under which it was prosecuted. Hence if it appears from the record that, under the applicable principles of law as interpreted by the Federal courts, the evidence was not sufficient in kind or amount to warrant a finding that the negligence of the railroad company was the cause of the death, the judgment must be reversed.' Citing *Gulf M. & N. R. Co.*

v. *Wells*, 275 U. S. 455, 457, 72 L. Ed. 370, 371, 48 Sup. Ct. Rep. 151, and cases cited.''

A photograph offered in evidence showed a paved sidewalk leading from the highway to the railroad tracks and it and the testimony shows that there was a space between the sidewalk and the paved street, in which space cars might be parked, all facing the depot, and that cars were so parked, two of these being trucks having high sideboards, and Mrs. Keene testified that these trucks parked side by side obstructed her view of the approaching train. The train was moving north according to all the testimony, including that of appellee himself, at a speed of about four, five or six miles per hour, and Mrs. Keene testified that she approached the crossing at about the same speed. It is undisputed that the headlight of the engine was burning brightly, casting its rays toward the crossing. It is possible, although highly improbable, that the parked cars may have obstructed Mrs. Keene's view of the approaching train as she traveled towards the crossing, but not for the entire distance of that journey, as the undisputed testimony is to the effect that there was a clear space of ten to twelve feet from the west rail of the track to the rear of the parked cars, where the view was not obstructed. There appears therefore to be only one reasonable explanation of Mrs. Keene's failure to see the train, and that is that she did not look. The conversation between Mrs. Keene and her companion just before the collision related to the difficulty in shifting the gears of the car.

The witness best placed to see exactly what happened was one Griffin, who was called as a witness for appellee. Griffin was 45 years old, and had lived in Elaine since 1918, and he had no connection with the railroad. He testified that he was present when the collision occurred, and that he was about thirty feet from the track walking from the west side to the east. He saw the man on the front end of the train with a lantern. The car came from behind him and passed him when he was about thirty feet from the crossing. He thought the train was about fifty to seventy-five feet south of the crossing when the whistle sounded, but he did not

know whether the bell was ringing or not, but that the whistle was blown while the train was on the passing track. The headlight was burning brightly and could be plainly seen.

It is insisted for the reversal and dismissal of the judgment that at the time of the injury appellee was riding on the running board attached to the cow catcher, in violation of a rule promulgated by the railroad company, for his safety, but we find it unnecessary to consider this question, or appellee's explanation of his violation of the rule for the reason that in our opinion the negligence of Mrs. Keene was the sole proximate cause of appellee's injury, for which of course the railroad company is not liable.

The case of *Penn. Ry. Co.* v. *Chamberlain,* 288 U. S. 333, 53 Sup. Ct. 391, 77 L. Ed. 819, arose under and involved an application and construction of the Federal Employers' Liability Act being a suit to recover for the death of a brakeman alleged to have been caused by the railroad's negligence. It was there said:

"We think, therefore, that the trial court was right in withdrawing the case from the jury. It repeatedly has been held by this court that before evidence may be left to the jury, 'there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' *Pleasants* v. *Fant,* 22 Wall. 116, 22 L. Ed. 780. And where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.' *Gunning* v. *Cooley,* 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; *Patton* v. *Texas & Pacific Railway Co.,* 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361. The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to new trial, it is the duty of the judge to direct the jury to find according to the views of the court.

Such a practice, this court has said, not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the ends of justice.' *Bowditch* v. *Boston,* 101 U. S. 16, 18, 25 L. Ed. 980; *Barrett* v. *Virginian Ry. Co.,* 250 U. S. 473, 476, 39 S. Ct. 540, 63 L. Ed. 1092, and cases cited; *Herbert* v. *Butler,* 97 U. S. 319, 24 L. Ed. 958. The scintilla rule has been definitely and repeatedly rejected so far as the federal courts are concerned." (Citing numerous cases.)

If it be contended that the jury might have found that no signals were given, and that had signals been given Mrs. Keene would not, or might not have driven her car in front of an advancing train, several answers suggest themselves, among others these:

The jury did not so find. The verdict against Mrs. Keene for a very substantial amount reflects the finding that she was guilty of negligence, which was a proximate cause of appellee's injury.

The case is an anomalous one. The suit was brought to compensate a single injury against two defendants having no relation to each other, and different rules are applicable in determining their respective liability. The suit against Mrs. Keene is determinable by the laws of this state, but our state laws are not determinative of the liability of the railroad company. As against the railroad company the Federal Employers' Liability Act governs and as said in the case of *St. L.-S. F. Ry Co.* v. *Smith, supra,* "the question as to the sufficiency of the evidence to establish negligence must be determined by that act and the applicable principles of the common law as construed by the federal courts."

That opinion contains a quotation from the case of *C. M. & St. P. Ry. Co.* v. *Coogan,* 271 U. S. 472, 46 Sup. Ct. 564, 70 L. Ed. 1041, reading as follows: "The rights and obligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act; and proof of such negligence is essential to recovery."

Mrs. Keene is no longer a party to this suit. She discharged her liability as found by the jury and the present appeal presents only the case of appellee against the railroad company and liability in that case depends upon the federal act and applicable principles of the common law as interpreted by the federal courts.

For this reason, we think the case of *Sands, et al., Receivers, M. & N. A. Rd. Co.* v. *Linch,* 122 Ark. 93, 182 S. W. 561, L. R. A. 1916E, 204, does not apply. There the railroad company had failed to fence its right-of-way as required by a local act, which failure resulted in certain sheep entering upon the railroad tracks, one of which was struck by a motor car, resulting in an injury to plaintiff who was riding on the car. It was there said: "While the statute was designed primarily for the protection of livestock and for the benefit of the owners of such stock that might be injured by a failure to comply with the requirements of the act, nevertheless, where such failure is the proximate cause or contributes proximately to cause a personal injury to an employee of the company, or anyone else, a breach of the statutory duty may be shown as evidence of negligence on the part of the company causing the injury."

So here, if we were considering a suit by or against Mrs. Keene, the question of the failure to blow the whistle or ring the bell, thereby giving warning of the movement of the train, would be important, under common law principles, as ordinary care required that notice of the movement of the train be given by blowing the whistle or otherwise; but blowing the whistle or ringing the bell were not the only methods by which warning could be given. The undisputed testimony is that a warning which should have sufficed was given according to appellee's own testimony. The evidence appears therefore to be "so overwhelming on one side as to leave no room to doubt what the fact is," that the negligence of Mrs. Keene was the sole proximate cause of appellee's injury, there being no substantial evidence of negligence on the part of the railroad company contributing to the injury.

The judgment must therefore be reversed and the cause will be dismissed.

MINOR W. MILLWEE, Justice (dissenting). I respectfully dissent from the decision of the majority in reversing and dismissing this case. The majority bases its decision on the ground that the negligence of defendant, Mrs. Chas. Keene, was the "sole, proximate cause" of the injury to appellee. In reaching this conclusion the majority has, in my opinion, invaded the province of the jury as the fact finding body, misconstrued certain testimony, and ignored the effect of the 1939 amendment to the Federal Employers' Liability Act and the decisions of the federal courts since adoption of the amendment.

In the case of *Tennant* v. *Peoria & Pekin R. Co.*, 321 U. S. 29, 64 S. Ct. 409, 88 L. Ed. 520, the Supreme Court of the United States, in an action under the amended act, held that the evidence sustained a jury's finding that the failure to sound the bell of a locomotive before starting it amounted to negligence on the part of the railroad and that such negligence was the proximate cause of the employee's death. The court there said: "The focal point of judicial review is the reasonableness of the particular inferences or conclusion drawn by the jury. It is the jury, not the court, which is the fact finding body . . .

"Upon an examination of the record we cannot say that the inferences drawn by this jury that respondent's negligence caused the fatal accident is without support in the evidence. Thus to enter a judgment for respondent notwithstanding the verdict is to deprive petitioner of the right to a jury trial. No reason is apparent why we should abdicate our duty to protect and guard that right in this case."

In construing the amended statute in the case of *Eglsaer* v. *Scandrett,* 151 F. 2d 562, the court said: "Perhaps the reconciliation of the earlier accepted, sometimes called the old fashioned idea, of 'proximate cause' as the direct or efficient cause of the accident . . . in cases where this statute applies, and the conception of proximate cause which now obtains, is to be found in the en-

larging phrase of the statute. It provides that if the railroad's negligence *'in part'* results in the injuries or death, liability arises. Under the old concept of proximate cause, that cause must have been direct, the complete, the responsible, the efficient cause of the injury. Contributing and remotely related causes were not sufficient. Now, if the negligence of the railroad has 'causal' relation',—if the injury or death resulted *'in part'* from defendants' negligence, there is liability.

"The words 'in part' have enlarged the field or scope of proximate causes—in these railroad injury cases. These words suggest that there may be a plurality of causes, each of which is sufficient to permit a jury to assess a liability. If a cause may create liability, even though it be but a partial cause, it would seem that such partial cause may be a producer of a later cause. For instance, the cause may be, the first acting cause which sets in motion the second cause which was the immediate, the direct cause of the accident . . . '' See, also, *Jenkins* v. *Kurn*, 313 U. S. 256, 61 S. Ct. 934, 85 L. Ed. 1316; *Tiller* v. *Atlantic Coast Line*, 323 U. S. 574, 65 S. Ct. 421, 89 L. Ed. 465; and *Ellis* v. *Union Pacific R. Co.*, 329 U. S. 649, 67 Sup. Ct. 598.

The majority states: "The great preponderance of the testimony is that signals were given. Indeed appellee himself so testified.'' In determining the sufficiency of the evidence to support a jury's verdict this court has universally applied the rule that, if there is any substantial evidence to sustain the verdict, it must stand and we are not required to find that the signals were not given by what we may conceive to be the preponderance of the testimony. Several witnesses testified that the signals were not given and none of the train crew, who should have been in position to give such testimony, were called as witnesses to dispute the testimony offered by appellee. The testimony of Eubanks was to the effect that the engineer blew the whistle "just as we were easing into the passing tract.'' The undisputed evidence discloses that upon entering the passing track the train was at that time more than 1500 feet from the crossing where appellee was injured. After enter-

ing the passing track the train was stopped and appellee threw the switch, and boarded the train, which traveled at a speed of 3 to 5 miles an hour to the crossing. The giving of the signal at the point testified to by appellee would certainly have afforded no warning to Mrs. Keene who may have been two or three miles from the crossing at that time. The majority's construction of the testimony of the witness Griffith is subject to the same misconception when read in its entirety.

It is difficult to select isolated bits of testimony and get a true picture of all the facts as the jury heard them from the various witnesses. If the testimony of Mrs. Keene, and others, is credible, the jury was warranted in finding not only that proper signals of the approach of the train were not given, but also that the only member of the crew, the fireman, who could have been in position to observe the situation at the time Mrs. Keene approached the crossing, was not even on the locomotive.

When the evidence is viewed as a whole it is, in my opinion, substantial and sufficient to support a finding by the jury that appellee was injured as a result of the concurring negligence of Mrs. Keene and the employees of the railway company. This issue was submitted to a jury under instructions to which no complaint has been made. Since Mrs. Keene has discharged the judgment against her, the majority reasons that the principles announced in our decision in *Sands, Receiver of M. & N. A. Rd. Co.* v. *Lynch*, 122 Ark. 93, 182 S. W. 561, L. R. A. 1916E, 204, are inapplicable here. It is difficult to follow this reasoning in view of the repeated holdings of our courts that the Federal Employers' Liability Act has as its main purposes the enlargement of the field of proximate cause, and the modification of the restrictive common law barriers against recovery, in railroad injury cases. Certainly the negligence of the employees and agents of the railway company is in no sense justified by the concurring negligence of Mrs. Keene. The right to have the jury, as the fact finding body, weigh the evidence and judge the credibility of the witnesses constitutes a vital part of the remedy af-

forded by the Act and employees should not be deprived of that right in close or doubtful cases. *Bailey, Adm.* v. *Central Vermont Ry. Inc.,* 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444. Inasmuch as the decision of the majority has, in my opinion, deprived appellee of this valuable right, I most respectfully dissent therefrom.

I am authorized to say that Justices ROBINS and McFADDIN concur in the views here expressed.